**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| COLLIN F. ENGLER, | CASE NO. 1:22-CV-01066 |
| Petitioner, | JUDGE BENITA Y. PEARSON |
| vs. | MAGISTRATE JUDGE AMANDA M. KNAPP |
| WARDEN KEITH J. FOLEY, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

Petitioner Collin F. Engler ("Petitioner" or "Mr. Engler") brings this habeas corpus petition pursuant to 28 U.S.C. § 2254.  (ECF Doc. 1 ("Petition").)  He filed his Petition and Memorandum in Support on June 17, 2022.[1]  (*Id*.)  His Petition relates to his convictions for aggravated vehicular homicide and operating a vehicle under the influence in Lake County Court of Common Pleas Case No. 18-CR-000472, and his sentence of eight years in prison.  (*Id*.)

The matter was referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2. The case is briefed and ripe for disposition.  (ECF Docs. 6 & 8.)  For the reasons set forth herein, the undersigned **DENIES** Petitioner's request for an evidentiary hearing and recommends that the Court **DISMISS** and/or **DENY** Mr. Engler's Petition.

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)).  Mr. Engler's Petition was docketed on June 17, 2022 (ECF Doc. 1), which is the same date he states he placed his Petition in the prison mailing system. (*id*. at p. 15).

## I.    Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *See id.*; *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008).

The Eleventh District Court of Appeals summarized the facts underlying Mr. Engler's conviction and sentence as follows:

{¶8}  On April 21, 2018, the Eastlake Police Department was dispatched to the corner of Vine Street and E. 359 Street for a "motorcycle car accident with injury." When they arrived on the scene, a woman, later identified as Abbigayl Forman ("Ms. Forman"), was lying in the intersection with a large amount of blood pooling around the left side of her head. A bystander, who also happened to be a nurse, was holding Ms. Foreman's head back so she could breathe, as was she was taking slow, gasping breaths. Ms. Forman was transported by emergency life flight but was later pronounced brain dead at the hospital.

{¶9}  Mr. Engler identified himself as the one who was driving the motorcycle and as Ms. Forman's boyfriend. He told the officer that a car had cut him off but that the two vehicles did not make contact. The officers could detect a strong odor of alcohol emanating from Mr. Engler's person. Mr. Engler stated that he was just coming from work and that they were going to meet friends. His speech was slurred, but he denied having anything to drink. Mr. Engler declined medical treatment and had no visible injuries to his face or head.

{¶10}  The police officer advised Mr. Engler that he was under arrest for OVI and transported him to the station. Mr. Engler was observed for 20 minutes prior to a breath test to ensure he had nothing in his mouth. He consented to the test after he was read the 2255 implied consent form. The breath test, which was taken on the Intoxilyzer 8000, measured a BAC of .158, almost twice the legal limit of .08.

{¶11}  Mr. Engler was subsequently indicted on eight counts: (1) OVI, a first-degree misdemeanor, in violation of R.C. 4511.19(A)(1)(a); (2) OVI, a first-degree misdemeanor, in violation of R.C. 4511.19(A)(1)(d); (3) aggravated vehicular homicide, a second-degree felony, in violation of R.C. 2903.06(A)(1)(a); (4) aggravated vehicular homicide, a second-degree felony, in violation of R.C. 2903.06(A)(1)(d); (5) aggravated vehicular homicide, a third-degree felony, in violation of R.C. 2903.06(A)(2); and (6), (7), & (8) involuntary manslaughter, a third-degree felony, in violation of R.C. 2903.04(B).

2

(ECF Doc. 6-1, pp. 197-98.)

## II.    Procedural Background

### A.    State Court Conviction

On October 16, 2019, a Lake County Grand Jury indicted Mr. Engler on two counts of operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them (Counts 1 and 2); three counts of aggravated vehicular homicide (Counts 3, 4, 5); and three counts of involuntary manslaughter (Counts 6, 7, 8).  (ECF Doc. 6-1, pp. 5-8.)  Mr. Engler entered a plea of not guilty to all counts.  (*Id.* at pp. 10-11.)

On January 9, 2019, Mr. Engler filed a motion to suppress evidence / motion in limine, seeking to suppress and prohibit the introduction of the following evidence: (1) observations and opinions of the police officers that stopped, observed, arrested, and/or tested Mr. Engler regarding his sobriety; (2) objects seized from Mr. Engler's vehicle; and (2) statements taken or made by Mr. Engler.  (*Id.* at pp. 13-21 ("Motion to Suppress I").)  He argued that suppression of the evidence was warranted because the officers lacked probable cause to arrest him without a warrant, and because the evidence was seized and his statements were obtained in violation of his constitutional rights, including rights guaranteed by the Fourth and Fifth Amendments.  (*Id.* at pp. 13-14.)

On the same day, Mr. Engler filed a motion to suppress breath test / motion in limine (*id.* at pp. 23-45), seeking to suppress and prohibit the introduction of the "tests of Defendant's breath alcohol level as measured by the Intoxilyzer 8000 breath alcohol testing device" (*id.* at p. 23 ("Motion to Suppress II").  He argued that suppression of the breathalyzer test results was warranted because: (1) the State failed to substantially comply with the rules and procedures adopted by the Ohio Department of Health ("ODH") for administration of the Intoxilyzer Breath

3

Alcohol Testing Machine in Ohio; (2) the device used to obtain the results was scientifically unreliable and produced inaccurate results; and (3) the machine used was not in working order, was not properly maintained, and was unreliable.  (*Id*. at pp. 23-24.)

On January 25, 2019, the State filed responses to Mr. Engler's motions to suppress.  (*Id*. at pp. 47-60, 315.)  On January 13 and January 27, 2020, the trial court conducted a hearing on the motions to suppress.[2]  (*Id*. at p. 63; ECF Doc. 6-2; ECF Doc. 6-3; ECF Doc. 6-4.)  During the second day of the suppression hearing, Mr. Engler withdrew Motion to Suppress I, which was based on alleged violations of his Fourth and Fifth Amendment, stating that he intended to only pursue Motion to Suppress II, which challenged the use of the Intoxilyzer test results.  (ECF Doc. 6-1, p. 63; ECF Doc. 6-4, pp. 5-13, 77.)  On February 3, 2020, the trial court denied Motion to Suppress II.[3]  (ECF Doc. 6-1, pp. 62-82.)

On February 6, 2020, Mr. Engler withdrew his former plea of not guilty and entered a plea of no contest to the charges as set forth in the indictment.  (*Id.* at pp. 84-88, 205.)  The trial court accepted Mr. Engler's no contest plea and set the matter for sentencing.  (*Id*. at pp. 88, 90-91.)  Mr. Engler's sentencing hearing was held on March 25, 2020.[4]  (*Id*. at pp. 93-96.)  The trial court sentenced Mr. Engler to six months in prison on Count 1 and a mandatory term of eight years in prison on Count 3, with the sentences to run concurrent to each other for a total prison term of eight years.[5]  (*Id*. at p. 94)

---

[2] The trial court's entry states that day two of the suppression hearing occurred on January 28, 2020.  (ECF Doc. 6-1, pp. 62, 63.)  But the transcript reflects that day two of the suppression hearing occurred on January 27, 2020.  (ECF Doc. 6-4, pp. 2, 5.)

[3] Given Mr. Engler's withdrawal of Motion to Suppress I, the court found that motion moot.  (ECF Doc. 6-1, p. 63.)

[4] The judgment entry of sentence was docketed on March 26, 2020.  (ECF Doc. 6-1, p. 93.)

[5] Count 2 was merged into Count 1 and Counts 4, 5, 6, 7, and 8 were merged into Count 3 for sentencing.  (ECF Doc. 6-1, p. 94.)

**B.**     **Direct Appeal**

On April 20, 2020, Mr. Engler, through counsel, filed a timely notice of appeal with the

Eleventh District Court of Appeals, appealing the trial court's denial of his motion to suppress

and judgment entry of sentence.  (ECF Doc. 6-1, pp. 98-101.)  In his September 21, 2020

appellate brief (*id.* at pp. 103-44), he raised the following assignments of error:

First Assignment of Error

The trial court erred to the prejudice of appellant by denying his motion to suppress
the breath test result.

Issues Presented for Review and Argument

> 1.     First Issue Presented for Review: Did the Trial Court err when it
> Determined that the Ohio Department of Health Substantially
> Complied with Ohio Administrative Code Section 3701-53-04(B)
> when the Ohio Department of Health Failed to Remove the
> Intoxilyzer 8000 Machine from Service after Receiving Several
> "Out of Tolerance" Test Messages.

> 2.     Second Issue Presented for Review: Did the Trial Court err when it
> Determined that the Ohio Department of Health Substantially
> Complied with Ohio Administrative Code Section 3701-53-04 when
> the Ohio Department of Health Failed to Maintain Service Repair
> Records for the Intoxilyzer 8000 Machine.

> 3.     Third Issue Presented for Review: Did the Trial Court err when it
> Determined that the Subject Test and Instrument Certification used
> a Dry Gas Standard Traceable to the National Institute of Standards
> and Technology (NIST) in Substantial Compliance with Ohio
> Administrative Code Section 3701-53-04(8).

> 4.     Fourth Issue Presented for Review: Did the Trial Court Abuse its
> Discretion when it Conducted its Own Research to Determine if the
> Ohio Department of Health Substantially Complied with the Ohio
> Administrative Code and Denying Appellant's Motion to Suppress
> Evidence.

<u>Second Assignment of Error</u>

The trial court erred by sentencing appellant to a maximum term of imprisonment of eight years on the aggravated vehicular homicide charge, when that sentence was contrary to law.

<u>Issues Presented for Review and Argument</u>

      1.      The trial court erred with it imposed a maximum of eight (8) year imprisonment on the aggravated vehicular homicide charge after it failed to consider all the enumerated purposes of felony sentencing pursuant to R.C. 2929.11 and thus, the sentence was contrary to law.

      2.      The trial court erred with it imposed a maximum of eight (8) year imprisonment on the aggravated vehicular homicide charge after it failed to make the necessary findings pursuant to R.C. 2929.14(C) and thus, the sentence was contrary to law.

<u>Third Assignment of Error</u>

The trial court committed an abuse of discretion when it imposed a maximum sentence of 180-days in jail for the first offense OVI charge

<u>Issue Presented for Review and Argument</u>

      1.      The trial court erred when it imposed a 180-day jail term on the OVI, after it failed to considered the enumerated purposes of misdemeanor sentencing pursuant to R.C. 2929.21 and the facts related to misdemeanor sentencing pursuant to R.C. 2929.22, thus, the sentence was an abuse of discretion.

(*Id*. at pp. 104-09, 112-35.)

      The State filed a brief in response on November 10, 2020 (*Id.* at pp. 146-78), and Mr. Engler filed a reply on November 20, 2020 (*id.* at pp. 180-93).  The Eleventh District Court of Appeals affirmed the trial court's judgments on March 29, 2021.  (*Id*. at pp. 195-216.)

      On April 30, 2021, Mr. Engler filed a notice of appeal to the Supreme Court of Ohio through counsel.  (*Id*. at pp. 220-22.)  In his memorandum in support of jurisdiction (*id.* at pp. 224-63), Mr. Engler raised the following proposition of law:

Proposition of Law No. 1

Courts should consider the totality of the circumstances when determining whether
the State of Ohio has met its burden of showing substantial compliance with
chemical testing regulations prescribed by the Ohio Department of Health, whether
a breath test machine is considered to be in working order at the time of a subject's
breath test, and ultimately, whether in light of the challenges raised, the individual
was prejudiced by the issues regarding the specific machine.

(*Id.* at pp. 225, 229-37.) The State filed a memorandum in response to jurisdiction on May 12,

2021. (*Id.* at pp. 265-83.) On June 22, 2021, the Supreme Court of Ohio declined to accept

jurisdiction of the appeal. (*Id.* at p. 311.)

## C. Federal Habeas Corpus Petition

Mr. Engler raises the following ground for relief:

**Ground One:** Trial court erred to the prejudice of petitioner by denying his motion
to suppress the breath test result.

(ECF Doc. 1, p. 5.) Mr. Engler does not include supporting facts in the body of the Petition.

(*Id.*) However, in his contemporaneously filed Memorandum in Support of his Petition (*id.* at

pp. 16-36) he elaborates on his sole ground for relief, stating:

Petitioner's due process rights were violated when the state courts failed to consider
the totality of the circumstances when determining whether the state of Ohio met
its burden of showing substantial compliance with chemical testing regulations
prescribed by the Ohio Department of . . . Health, whether a breath test machine is
considered to be in working order at the time of a subject's breath test, and
ultimately, whether in light of the challenges raised, the individual was prejudiced
by the issues regarding the specific machine.

(*Id.* at p. 22.)

## III. Law & Analysis

## A. Standard of Review Under AEDPA

A federal court is limited to deciding whether a conviction violated the Constitution,

laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28

U.S.C. § 2241); s*ee also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus

relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We

have long recognized that a 'mere error of state law' is not a denial of due process.") (internal

citation omitted)); *see also Duett v. Warden, Noble Corr. Inst.*, No. 1:19-CV-725, 2020 WL

4933892, at *3 (S.D. Ohio Aug. 24, 2020) (explaining that a "[v]iolation by a State of its own

procedural rules does not necessarily constitute a violation of due process").

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–

132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the

effective date of the AEDPA.  *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  "As

amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to

grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v.*

*Pinholster*, 563 U.S. 170, 181 (2011).  Under 28 U.S.C. § 2254, federal courts may "entertain

only those applications alleging that a person is in state custody 'in violation of the Constitution

or laws or treaties of the United States'" and in most instances, federal courts may not grant

habeas relief "unless . . . the applicant has exhausted state remedies."  *Id.* (citing 28 U.S.C. §§

2254(a), (b), (c)).  If an application for writ of habeas corpus involves a claim that was

"adjudicated on the merits in State court proceedings," the application "shall not be granted"

unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §§ 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007).  The burden of proof rests with the petitioner.  *See Cullen*, 563 U.S. at 181.

## B.  Petitioner's Sole Ground for Relief

In his sole ground for relief, Mr. Engler challenges the state court of appeals decision affirming the trial court's denial of his motion to suppress the results of the breathalyzer test.[6] (ECF Doc. 1; ECF Doc. 8-1.)  He argues that the evidence did not support the appellate court's conclusions that the State met its burden to show substantial compliance with Ohio's rules and procedures for administering the test, and that Engler failed to demonstrate prejudice.  (*Id.*)

Respondent argues that Mr. Engler's sole ground for relief is barred from federal habeas review under *Stone v. Powell*, 428 U.S. 465 (1976), because it challenges a search under the Fourth Amendment.  (ECF Doc. 6, pp. 1, 8-10.)  Alternately, Respondent argues that the state court of appeals's interpretation and application of Ohio law to the facts when affirming the trial court's denial of Mr. Engler's motion to suppress the breathalyzer results is entitled to deference, and that Mr. Engler cannot demonstrate a due process violation.  (*Id.* at pp. 1, 10-19.)  Petitioner asserts that Respondent improperly attempts to "reframe" his ground for relief as a *Stone v. Powell* argument, arguing that his sole ground for relief alleges that his constitutional right to due process was violated when the state court improperly allowed admission of the breathalyzer test

---

[6] The Memorandum in Support of Habeas Corpus filed with the Petition contains a brief argument regarding Petitioner's sentence.  (ECF Doc. 1, pp. 31-33.)  But Petitioner did not assert an assignment of error relating to sentencing in his Petition (*see id.* at pp. 1-15) and did not appeal the sentencing challenge from his direct appeal to the Supreme Court of Ohio (ECF Doc. 6-1, p. 225).  Thus, to the extent Petitioner intended to raise a sentencing challenge in this proceeding, that claim is not properly before this Court because it was not fairly presented at every level in state court, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999), and Petitioner has waived his right to assert an assignment of error based on sentencing, *see McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (finding issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (internal citations omitted) (alteration in original).

results.  (ECF Doc. 8-1, pp. 6, 12.)  The undersigned turns first to the question of whether *Stone v. Powell* applies to bar Mr. Engler's federal habeas claims.

### 1.      Petitioner's Due Process Claim is Not Barred by *Stone v. Powell*

 In *Stone v. Powell*, the Supreme Court held: "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  428 U.S. at 494.  In so holding, the Court acknowledged the deterrent effect of applying the exclusionary rule at trial and on direct appeal—i.e., discouraging law enforcement officers from violating the Fourth Amendment by removing the incentive to disregard it—but reasoned that any additional deterrent effect that might be gained by applying the rule on federal habeas review would be minimal and would be outweighed by substantial societal costs.  *Id.* at 492-94.

To determine whether the state provided an "opportunity for full and fair litigation of a fourth amendment claim" under *Stone*, the Sixth Circuit requires two distinct inquiries.  *See Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982).  First, the court must consider "whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim."  *Id*. at 526.  Second, the court must consider "whether presentation of the claim was in fact frustrated because of a failure of that mechanism."  *Id.*  Overall, an opportunity for full and fair litigation under *Powell* "means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim."  *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013).

The administration of a breathalyzer test is a search under the Fourth Amendment.  *See Birchfield v. North Dakota,* 579 U.S. 438, 455 (2016) (citing *Skinner v. Ry. Lab. Executives'*

*Ass'n*, 489 U.S. 602, 616-17 (1989)).  But the Petition does not assert that Mr. Engler is entitled

to federal habeas relief because his Fourth Amendment right to be free from an unreasonable

search and seizure was violated.  Indeed, such a claim would likely be futile because Mr. Engler

consented to the breath test (ECF Doc. 6-1, p. 198) and withdrew the motion to suppress that was

based on alleged Fourth Amendment violations (ECF Doc. 6-1, p. 63; ECF Doc. 6-4, pp. 5-13,

77).  Instead, the Petition argues that Mr. Engler's constitutional right to due process was

violated when the state courts allowed evidence that was "suspect due to faulty equipment"—the

results of the breathalyzer test—to be used against him (ECF Doc. 8-1, p. 13).  (ECF Doc. 1, pp.

22-36.)  Since no Fourth Amendment violation is alleged in the Petition, the undersigned finds

*Stone v. Powell* has no application and does not bar the claim in Ground One.

### 2.      Petitioner's Federal Habeas Claim Should Be Dismissed and/or Denied

### i.      "Fair Presentation" of the Constitutional Claim in the State Courts

Although the Return of Writ does not seek dismissal based on procedural default, the

state court record suggests that Petitioner did not "fairly present" the federal due process claim

from Ground One to the state courts.  A federal court may not grant a writ of habeas corpus

unless the petitioner has exhausted all available remedies in the state courts, including fairly

presenting those claims to the state courts.  *See* 28 U.S.C. §§ 2254(b), (c); *Anderson v. Harless*,

459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

To satisfy the fair presentation requirement, a habeas petitioner must present both the

facts and legal theories underpinning his claims to the state courts.  *See McMeans v. Brigano*,

228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the

state courts as federal constitutional issues and not merely as issues arising under state law.  *See,*

*e.g.*, *Baldwin v. Reese*, 541 U.S. 27, 29, 33-34 (2004); *Franklin v. Rose*, 811 F.2d 322, 324-25

(6th Cir. 1987).  "Because state courts, like federal courts, are required to enforce federal law, including rights asserted under the Constitution," the Sixth Circuit observes: "comity requires that the state courts should have the first opportunity to review the prisoner's federal claim and provide any necessary relief."  *Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d 746, 751 (6th Cir. 2021) (quoting *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005)).  To determine whether a claim was "fairly presented," Sixth Circuit courts consider whether the petitioner:

> (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.

*Nian*, 994 F.3d at 751 (citations and internal quotation marks omitted).

Here, Mr. Engler did not assert the federal due process claim from Ground One in either his direct appeal or his request for review by the Supreme Court of Ohio.  On direct appeal, he argued that the trial court erred in finding the Ohio Department of Health had complied with the Ohio Administrative Code and by conducting its own research, supporting his arguments with citations to Ohio state court decisions, the Ohio Revised Code, and the Ohio Administrative Code.[7]  (ECF Doc. 6-1, p. 104, 108, 112-26.)  He then argued in his request for Ohio Supreme Court review, again based on citations to state court decisions and the Ohio Administrative Code, that courts should consider the totality of the circumstances in assessing the Ohio Department of Health's compliance with its own chemical testing regulations.  (*Id.* at pp. 225-37.)  The record therefore suggests that Mr. Engler failed to "fairly present" the due process claim asserted in Ground One of the Petition to the state courts.

---

[7] The only federal case referenced in the brief was a U.S. Supreme Court decision cited by an Ohio appellate court for the proposition that a trial court's legal conclusions are reviewed de novo.  (*See* ECF Doc. 6-1, p. 113 (citing *State v. Russell*, 127 Ohio App.3d 414, 416 (1998) (citing *Ornelas v. U.S.*, 517 U.S. 690, 698-99 (1996)).)

This Court is not precluded from raising the issue of procedural default sua sponte.  *See Whitman v. Gray*, 103 F.4th 1235, 1239 (6th Cir. 2024), *cert. denied sub nom. Whitman v. Smith*, 145 S. Ct. 1060 (2025); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005).  But "procedural default is normally a 'defense' that the State is 'obligated to raise' and 'preserv[e]' if it is not to 'lose the right to assert the defense thereafter.'"  *Trest v. Cain*, 522 U.S. 87, 89 (1997) (internal citations omitted) (bracket in original).  "The main concern with raising procedural default sua sponte is that a petitioner not be disadvantaged without having had an opportunity to respond."  *Howard*, 405 F.3d at 476.

Here, Mr. Engler argues generally that "any alleged procedural default should be waived in the interest of justice and the merits of [his] claim should be address[ed] by this Honorable Court to avoid a manifest injustice."  (ECF Doc. 1, p. 22.)  But he did not have an opportunity to present arguments in response to the "fair presentation" issues discussed above, including any arguments that might support findings of cause and prejudice to excuse the procedural default.[8]  Ultimately, the undersigned concludes that this Court need not decide the issue of procedural default sua sponte, and recommends instead that the Court **DISMISS** the Petition as non-cognizable and/or **DENY** the Petition on the merits for the reasons explained below.

### ii.  Petitioner's Claim is Not Cognizable and/or Without Merit

Respondent argues that the Petition lacks merit because state court interpretations of state law, like those challenged in the Petition, are binding on federal courts sitting in habeas corpus, and because Mr. Engler has not challenged the underlying state court factual findings that have been presumed correct under applicable law.  (ECF Doc. 6, p. 19.)  Mr. Engler acknowledges

---

[8] "While procedural default is not a jurisdictional bar to review . . . federal courts ordinarily may not consider a claim in a habeas petition that was not fairly presented to the state courts absent cause and prejudice to excuse the procedural default." *Nian*, 994 F.3d at 751 (internal citations, quotations, and italics omitted).

that federal courts defer to state courts on many matters, and that habeas petitioners bear the burden of rebutting a state court's factual findings, but argues that state courts do not "have an unfettered right to run its court proceedings in any manner at all" and that deprivation of a fundamental right is "constitutional error." (ECF Doc. 8-1, pp. 4, 6.)

As a general matter, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241); s*ee also Lewis*, 497 U.S. at 780 ("[F]ederal habeas corpus relief does not lie for errors of state law[.]"); *Engle*, 456 U.S. at 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (internal citation omitted)).

A "state appellate court's interpretation of its own law and evidentiary rules, 'including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Chambers v. Artis*, No. 22-1247, 2022 WL 18542503, at *2 (6th Cir. Nov. 3, 2022) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam)); *see also Small v. Brigano*, 134 F. App'x 931, 936 (6th Cir. 2005) (indicating that habeas courts presume that Ohio state courts correctly interpret Ohio law in their evidentiary rulings). Thus, "[i]n general, alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review." *Moreland v. Bradshaw,* 699 F.3d 908, 923 (6th Cir. 2012).

It is only "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, [that] it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). "[C]ourts 'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'" *Bugh*, 329 F.3d at 512 (citing *Wright v.*

14

*Dallman*, 999 F.2d 174, 178 (6th Cir. 1993) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)); *see also Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) ("Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (bracket in original)).

### a.      Any Challenge Based on State Law is Not Cognizable

Mr. Engler challenges the state trial court's evidentiary ruling regarding the breathalyzer test results, and the affirmance of that ruling by the state court of appeals, asserting that he was denied a fair trial.  (ECF Doc. 1; ECF Doc. 8-1.)  To the extent Mr. Engler seeks federal habeas relief because the evidentiary rulings of the state trial court and/or court of appeals were contrary to state law or evidentiary rules, he fails to state a cognizable claim upon which federal habeas relief may be granted.  As explained above, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68.  Thus, "alleged errors in evidentiary rulings by state courts are [generally] not cognizable in federal habeas review." *Moreland,* 699 F.3d at 923.  Accordingly, to the extent Mr. Engler seeks relief based on alleged violations of state law, the undersigned recommends that the Court **DISMISS** Ground One as not cognizable on federal habeas review.

### b.      Petitioner Has Failed to Show a Due Process Violation Warranting Federal Habeas Relief

The state court of appeals considered Mr. Engler's first assignment of error, where he argued that the trial court erred to his prejudice when it denied his motion to suppress the breathalyzer results, and found the arguments lacked merit, explaining:

> {40} The General Assembly has legislatively provided for the admission of tests used to determine alcohol levels based on the testing of blood, breath, or urine.

{41} R.C. 4511.19(0)(1 )(b) pertinently states that "[i]n any criminal prosecution* **for a violation of division (A) or (B) of this section * * *, the court may admit evidence on the concentration of alcohol * * * in the defendant's * * * breath * * * at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation." Further, the withdrawn breath "shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." The General Assembly, then, has determined that a breath-test result is reliable evidence when the test complies with ODH regulations.

{42} "Administrative rules enacted pursuant to a specific grant of legislative authority are to be given the force and effect of law." *Doyle v. Ohio Bur. of Motor Vehicles*, 51 Ohio St.3d 46, 554 N.E.2d 97 (1990), paragraph one of the syllabus. Further, once the Director of Health has promulgated regulations for breath testing instruments, it must be presumed that the Director of Health acted upon adequate investigation. We must defer to the director's authority and may not substitute our judgment. *State v. Yoder*, 66 Ohio St.3d 515, 518, 613 N.E.2d 626 (1993). Ohio Adm. Code Sections 37-53-01 to 37- 53-10 govern the proper procedures of the Intoxilyzer 8000.

{43} "After a defendant files a motion to suppress the admission of alcohol test results, 'the state has the burden to show that the test was administered in substantial compliance with the regulations prescribed by the Director of Health.'" *Columbus v. Hutchison*, 10th Dist. Franklin No. 15AP-667, 2016-Ohio-3186, ¶ 28, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 24. "Substantial compliance creates a 'presumption of admissibility' that the defendant can only rebut 'by demonstrating that he was prejudiced by anything less than strict compliance' with the regulations." Id. at ¶ 28, quoting *Burnside* at ¶ 24.

{44} In his first assignment of error, Mr. Engler challenges his Intoxilyzer 8000 breath test result and the trial court's denial of his motion to suppress. Specifically, he argues ODHDAT (1) failed to remove the instrument when it received several "out of tolerance" messages; (2) failed to maintain service repair records; and (3) failed to use a dry gas standard traceable to the NIST. He also argues that the trial court impermissibly conducted its own research.

{45} We agree with the trial court that the state met its burden of showing substantial compliance and that Mr. Engler failed to demonstrate prejudice with either the specific test results or operational/maintenance issues regarding the specific machine. As our review of the trial court's factual findings demonstrated: Insp. Yanni testified that the machine was certified in working order; Mr. Marquis testified that "out of tolerance" means the machine should be on a watch list and replaced if it tests out of tolerance at some later date; there was one service record missing from the instrument issues log from March 21, 2018 when Insp. Yanni did an RFI check, but "that appeared to be the only record potentially missing regarding

this machine;" and the dry gas standard was traceable to NIST. The trial court also separately researched the NIST issue and included its research in the judgment entry, which we agree with Mr. Engler is impermissible, but in this case, not prejudicial.

{46} Pursuant to Ohio Adm. Code 3701-53-04, there was lengthy testimony from Mr. Marquis that a proper annual certification was done on the Eastlake Police Department's Intoxilyzer 8000 machine, which included a dry gas tolerance test, a wet bath simulator test, and an RFI check, and that the machine was certified in proper working order on February 26, 2018.

{47} Pursuant to Ohio Adm. Code 3701-53-04(8), results of instrument checks, controls, certifications, calibration checks, and records of service and repairs must be maintained for three years. The trial court found that one missing record does not show that ODHDAT did not substantially comply with the three-year specification of proper recordkeeping. The evidence affirmatively established that records were kept for at least three years, if not for the entire life of the instrument, and that the state introduced records indicating that this specific instrument was properly certified before Mr. Engler's test, and most importantly, that it was in proper working order when it performed his test.

{48} The record did not, however, affirmatively establish that a March 21, 2018 RFI check was missing an "instrument issues" record that should have been entered. Insp. Yanni testified that "if there was some problem with the machine * * * it's not documented," since nothing was reported on the issues log. The RFI check was documented in the COBRA data but did not have a corresponding entry in the issues log. He did not "remember going there for an RFI." The record is silent as to whether these types of RFI checks are routinely entered into the instrument issues log.

{49} As the Fifth District noted in *State v. Lentz,* 5th Dist. Delaware No. 09 CAC 07 0065, 2010-Ohio-762, "[w]e recognize that record keeping, including maintenance and repair records, is important so that defendants may conduct complete and relevant discovery concerning the instrument that was used to conduct their test. However, rigid compliance with the three-year specification in the ODH record-keeping regulation is not required where the records themselves are not shown to be misleading, inaccurate, or incomplete." *Id.* at ¶ 19.

{50} Mr. Engler also takes issue with the trial court's research on whether the dry gas traceability standards of NIST and NMI are equivalent. It is an abuse of discretion for a court to conduct its own investigation and consider its own observations as evidence in deciding a case. See, *e.g., State v. Stanley,* 11th Dist. Portage No. 2007-P-0104, 2008-Ohio-3258, ¶ 28. Notwithstanding this prohibition and the trial court's outside research detailed in its entry denying the motion to suppress, the trial court's error was harmless because there was already evidence by way of testimony from ODH witnesses that the dry gas used had a traceability

to NIST, pursuant to Ohio Adm. Code 3701-53-04(8). Specifically, Ms. Walock testified the Certificate of Analysis "provides an unbroken chain of traceability back to NIST standards." Insp. Yanni stated the .100 dry gas sample that was used for the certification showed that it was prepared using NIST standards and that it was also traceable to NMI standards.

{51} We find Mr. Engler's first assignment of error to be without merit because there is no evidence that the Intoxilzyer 8000 instrument at the Eastlake Police Department was not properly certified or not in working order at the time of Mr. Engler's test. The state met its burden of showing substantial compliance and Mr. Engler failed to demonstrate any prejudice.

{52} Mr. Engler's first assignment of error is without merit.

(ECF Doc. 6-1, pp. 206-10.)

Mr. Engler challenges the state court's determination that the breathalyzer results were properly admitted, asserting that the evidence was unreliable and therefore not legally sufficient to support his conviction, and that the admission of the evidence resulted in a denial of his due process right to a fair trial.[9]  (ECF Doc. 1, pp. 28-29; ECF Doc. 8-1, p. 14.)  He argues that "there were serious concerns with the machine at issue," and those concerns "taken together, show that ODH was not in substantial compliance with the Ohio Administrative Code and that he was prejudiced by the issues presented."  (ECF Doc. 1, p. 35.)

To be entitled to federal habeas relief, Mr. Engler must establish either that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181.

---

[9] Mr. Engler did not present a sufficiency of the evidence claim in state court and his Petition, even liberally construed, does not present such a claim.  Thus, to the extent that Mr. Engler seeks federal habeas relief on the basis that his conviction is not supported by sufficient evidence, such a claim is not properly before this Court.

To the extent that Mr. Engler intends to challenge the state court's findings based on the law, he has failed to identify any "clearly established Federal law" that precludes the admission of the relevant breathalyzer test results.  Instead, he simply reasserts the same arguments he presented to the state court of appeals, based on state law, including claims that: (1) there were multiple out of tolerance messages regarding the dry gas controls and therefore the device should have been taken out of service (ECF Doc. 1, pp. 26-28; ECF Doc. 8-1, p. 10); (2) the test results should have been deemed inadmissible because the State did not maintain all service records (ECF Doc. 1, pp. 28-33; ECF Doc. 8-1, p. 10-11); and (3) the State was using a dry gas control that did not comply with Ohio's regulations regarding traceability (ECF Doc. 1, pp. 34-35.)  The undersigned therefore concludes that Mr. Engler has failed to demonstrate that the state court's findings were contrary to or unreasonably applied clearly established federal law.

To the extent that Mr. Engler intends to challenge the state court of appeals's factual determinations, or contends that those factual determinations were unreasonable, the Sixth Circuit has explained that "[a] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record[]") *Matthews*, 486 F.3d at 889 (quoting and citing 28 U.S.C. § 2254(d)(2) and § 2254(e)(1)). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (internal citations and quotations omitted).  "Clear and convincing evidence is that measure or degree of proof which is more than a mere preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and which will produce in the mind of the trier of

facts a firm belief or conviction as to the facts sought to be established." *Elder v. Berghuis,* 644 F. Supp. 2d. 888, 893 (W. D. Mich. 2009) (citing *Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 991 (6th Cir. 2007)).

The undersigned concludes that Mr. Engler has not rebutted the factual determinations of the state court of appeals by clear and convincing evidence. He simply resubmits arguments presented to the state court and reasserts that the State failed to demonstrate substantial compliance with State regulations. However, "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

Additionally, the Supreme Court has explained that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76 (citations omitted)). And the Sixth Circuit instructs that this Court "should not second guess a state court's decision concerning matters of state law." *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001). This Court is therefore bound by the Ohio state court's finding that the State demonstrated substantial compliance with Ohio's regulations concerning the Intoxilyzer 8000.

Further, Mr. Engler has not demonstrated that the state court's evidentiary ruling—which was premised on its determination that the State substantially complied with the Ohio's regulations and that Mr. Engler had not demonstrated prejudice—was "so egregious" that it "result[ed] in a denial of fundamental fairness." *Bugh*, 329 F.3d at 512. Indeed, "courts have defined the category of infractions that violate fundamental fairness very narrowly.'" *Bugh*, 329 F.3d at 512 (internal quotations and citation omitted). And given the highly deferential standard

20

applicable in federal habeas proceedings, he has not shown that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington*, 562 U.S. at 103).

For the reasons set forth above, the undersigned recommends that the Court find Ground One to be without merit and **DENY** Mr. Engler's Petition.

### IV.    Request for Evidentiary Hearing

Mr. Engler requests an evidentiary hearing "so that the evidence can be presented in person considering the serious nature of the charges for which [he] was convicted and sentenced." (ECF Doc. 1, p. 36; *see also* ECF Doc. 1, p. 15, ECF Doc. 8-1, p. 15.) However, his request for an evidentiary hearing is conclusory. He has not identified what additional evidence might be elicited and he has not demonstrated that any evidence he would seek to offer could not have been previously discovered through the exercise of due diligence. *See generally* 28 U.S.C. § 2254(e)(2). Additionally, the claims at issue can be resolved by reference to the state court record. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."); *see also Cullen*, 563 U.S. at 183 (discussing *Schriro*).

Given Mr. Engler's conclusory and underdeveloped request for an evidentiary hearing, the undersigned finds he has not shown that an evidentiary hearing is warranted or appropriate. The request for a hearing is accordingly **DENIED**.

## V.    Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DISMISS** and/or **DENY** Mr. Engler's Petition.

Date: May 21, 2025

*/s/ Amanda M. Knapp*
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE

## <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).